# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

                                  :

**RYAN MONROE,**                   :

                                   :

            **Plaintiff,**        :      **Civil Action No. 11-2556 (JLL)**

                                   :

      **v.**                          :

                                   :

**CITY OF HOBOKEN, et al.,**     :             **OPINION**

                                   :

            **Defendants.**      :

_____:

## I.      INTRODUCTION

This matter comes before the Court by way of plaintiff Ryan Monroe's (plaintiff or "Monroe") motion for leave to file an amended complaint.  Monroe seeks to amend the complaint to properly name the "John Doe" defendants who are currently identified in the original complaint as Hoboken police officers A, B, and C.  For the reasons set forth below, plaintiff's motion is granted in part and denied in part.

## II.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.      Background

Monroe alleges, *inter alia*, that Hoboken police officers Edward Lepre, Nicholas Burke, and Rinaldo Gonzalez intentionally, maliciously, and/or recklessly arrested and detained him on February 21, 2010.  (Proposed First Am. Compl. ("Am. Compl.") ¶ 40, Dec. 23, 2011, ECF No. 8-1.)  At the time of the arrest, plaintiff was 30 years old and had no criminal record. (*Id.* ¶ 10.)

According to the police report, at approximately 1:25 pm on February 21, 2010, Officers

Lepre and Burke were sent to investigate a report of domestic violence. (Defs.' Opp'n Br. ("Opp'n") Ex. B, Dec. 28, 2011, ECF No. 10-1.) The victim informed Officers Lepre and Burke that her boyfriend, Robben Oakley, had assaulted her and that he was at the New York Sports Club. (*Id.*)  She gave the officers a physical description of him and said he was wearing dark workout clothes. (*Id.*)  The officers went to look for Mr. Oakley and approached plaintiff as he was walking home from the gym. (*Id.*)  The parties dispute what took place next.

Plaintiff alleges that as he was walking home from the Supreme Fitness Gym and talking on the phone with a friend, an unmarked vehicle came to a stop. (Am. Compl. ¶¶ 11, 12, 13, ECF No. 8-1.)  He heard shouting, but kept walking because he did not recognize the person. (*Id.* ¶¶ 14, 15.)  Plaintiff claims that Officer Lepre, with Officer Burke a few feet behind, ran towards him and backed him against a metal railing. (*Id.* ¶¶ 16-17.)  According to plaintiff, Officers Lepre and Burke did not identify themselves as police officers and insisted that the plaintiff was "Ryan Oakley," even after he identified himself as Ryan Monroe. (*Id.* ¶¶ 18-19.) The officers questioned him and asked for identification. (*Id.* ¶ 20, 22.)  Plaintiff explained that he did not carry identification when he went to the gym, but he told the officers his address and date of birth. (*Id.*)  Plaintiff then asked Defendant Officers Lepre and Burke to identify themselves, but they responded by telling plaintiff that only they do the questioning. (*Id.* ¶ 23.) Plaintiff alleges that Officer Burke then twisted his right arm behind his back, ripped his cell phone out of his hand, and handcuffed him. (*Id.* ¶¶ 24-25.)  Plaintiff further alleges that Officers Burke and Lepre did not identify themselves as police officers at any time prior to handcuffing him. (*Id.* ¶ 26.)

After handcuffing plaintiff, Officers Burke and Lepre put him in the backseat of the

unmarked car and told him that he was being detained.  (*Id.* ¶ 27.)  In the car, the officers said

they were looking for a man named Ryan who assaulted his girlfriend, and that they were told he

was at a gym.  (*Id.* ¶ 28.)  Plaintiff claims that he, again, gave the officers his address and

suggested they talk to his girlfriend, who was at his apartment.  (*Id.* ¶ 29.)  Instead, Officers

Lepre and Burke drove down the street and stopped at a marked police car. (*Id.* ¶¶ 30- 31.)

A uniformed officer, later identified as Sergeant Rinaldo Gonzalez, approached the

vehicle.  (*Id.* ¶ 31.)  Officers Lepre and Burke stepped out of the car and spoke to Sergeant

Gonzalez.  (*Id.*)  Plaintiff allegedly heard one of the officers ask Sergeant Gonzalez if plaintiff

was the "right guy."  (*Id.* ¶ 32.)  Sergeant Gonzalez allegedly replied that he did not know

because "white people all look alike to me." (*Id.* ¶ 33.)  Plaintiff also claims that he heard one of

the officers say that they had gone too far and would need to take him "down."  (*Id.* ¶ 32.)  In

addition, plaintiff claims that Sergeant Gonzalez asked him why he was sweating and accused

him of possessing drugs.  (*Id.* ¶ 33.)  Plaintiff allegedly told Sergeant Gonzalez that he was

sweating because he had just left the gym.  (*Id.*)

Officers Lepre and Burke then took plaintiff to the police station, and removed his

handcuffs before they entered.  (*Id.* ¶ 34.)  Once inside, the officers told plaintiff to sit and wait.

(*Id.* ¶ 35.)  After a few minutes, Officer Lepre gave plaintiff a summons charging him with

disorderly conduct and ordering him to appear in Hoboken Municipal Court on March 2, 2010.

(*Id.* ¶¶ 35-36.)

After this incident, plaintiff Monroe retained counsel, who submitted a notice of

appearance and a plea of not guilty to the Hoboken Municipal Court.  (*Id.* ¶ 37.)  Before the date

of the appearance, the municipal court informed plaintiff's counsel that the summons had never

been entered into the system; therefore, no appearance was necessary.  (*Id.* ¶ 38.)  Since that

time, plaintiff has not received any notice regarding the summons.  (*Id.* ¶ 39.)

### B.    Procedural History

On May 4, 2011, plaintiff Monroe filed a complaint against defendants asserting claims

pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth and Fourteenth Amendments, arising

from defendants' alleged unlawful seizure, arrest, and detention of plaintiff. (Compl. ¶1, ¶ 40,

ECF No.1.)  Plaintiff also asserts state law claims including a violation of the New Jersey Civil

Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-1. *et seq*, and various tort claims. (*Id.* ¶¶ 54, 63,

65, 69, 72, 75.)  In the original complaint, plaintiff named defendants as the City of Hoboken,

Anthony P. Falco, Sr., Chief of the Hoboken Police Department, and unknown Officers A, B, C,

and D through Z. (*Id.* at 1.)

On September 19, 2011, the Court entered a Pretrial Scheduling Order which provided

that the deadline for any motions to amend pleadings would be September 30, 2011. (Order at 3 ¶

13, Sept. 19, 2011, ECF No. 6.)  It also provided that fact discovery would remain open through

January 31, 2012.  (*Id.* at 1 ¶ 2, ECF No. 6.)  Following a telephone conference on December 14,

2011, the Court entered an amended scheduling order that extended fact discovery to March 15,

2012 and authorized plaintiff to file a motion for leave to amend the complaint by December 23,

2011.  (Order, Dec. 14, 2011, ECF No. 7.)

On December 23, 2011, plaintiff filed the instant motion for leave to amend the

Complaint.  (Mot. to Am., ECF Nos. 8, 9.)  Plaintiff seeks to substitute the fictitious names of

Officers A, B, and C with their proper identities, respectively, Edward Lepre, Nicholas Burke,

and Rinaldo Gonzalez.  (Mot. to Am., ECF Nos. 8, 9.)  Plaintiff's counsel sent a form of Consent

4

Order to defendants' counsel on December 12, 2011.  (Mot. to Am. Ex. B., ECF No. 9-2.)

Defendants responded that they could not consent to permitting the plaintiff to amend the

complaint.  (Mot. to Am. Ex. C, ECF No. 9-3.)

On December 23, 2011, plaintiff filed the instant motion for leave to amend the

Complaint.  (Mot. to Am., ECF Nos. 8, 9.)  On December 28, 2011, defendants filed an

opposition to the motion.  (Opp'n, ECF No. 10.)  Plaintiff filed a reply on January 10, 2012.

(Reply, ECF No. 11.)

### III.    ARGUMENTS

#### A.    Plaintiff's Motion

Plaintiff argues that pursuant to Rule 15(a)(2), the Court should freely permit the

amendment of pleadings when justice requires. (Mot. to Am. at 2, ECF No. 9-4.)  Plaintiff asserts

that there have been no other failures by plaintiff to cure deficiencies and plaintiff has fulfilled all

of his obligations thus far in this litigation.  (*Id.* at 3.)  He also contends that the original

complaint extensively described the officers' conduct on the day at issue which made it possible

for the defendants to identify the officers and provide their names.  (*Id.*)  Thus, plaintiff claims

that allowing the amendment will not prejudice defendants.  (*Id.*) Additionally, plaintiff argues

that because the original complaint "spelled out in detail the actions of the officers involved" and

that "the only fact missing from the Complaint was the names of the officers," good cause exists

to modify the scheduling order.  (*Id.* at 4-5.)

#### B.    Defendants' Opposition

Defendants oppose the motion to amend the complaint for two reasons.  (Opp'n, ECF No.

10-1.)  First, defendants argue that the plaintiff has failed to show good cause for modifying the

5

pre-trial scheduling order, as required by Fed. R. Civ. P. 16(b)(4).  (*Id.* at 1-2.)  Defendants argue that plaintiff knew, or could have learned through reasonable diligence, the officers' proper identities before the September 30, 2011 deadline to amend the pleadings.  (*Id.* at 2-3.) Defendants claim that plaintiff's Rule 26 disclosures, dated September 13, 2011, indicate that plaintiff's counsel had the summons that was issued to plaintiff, which included Officer Lepre's name and badge number. (Opp'n, Ex. A, at 9 ¶ 2, ECF No. 10-1.)  Defendants also contend that plaintiff could have exercised due diligence to obtain the names of the officers by accessing Officer Lepre's Investigation Report from the public record. (Opp'n at 2, ECF No. 10-1.) In addition, defendants argue that good cause requires more than the absence of undue prejudice to the opposing party. (*Id.* at 4.)

Defendants also claim that plaintiff's complaint does not support the assertion that Sergeant Gonzalez violated any of plaintiff's constitutional rights, so allowing plaintiff to amend the complaint to include Sergeant Gonzalez would be futile.  (*Id.* at 4.)  Defendants contend that Sergeant Gonzalez is named in only one paragraph of the Proposed Complaint, Paragraph 33, and that his alleged statement "white people all look alike to me" is insufficient to state a cause of action under either federal or state law.  (*Id.* at 4-5.)  In addition, defendants claim that the state law causes of action against Sergeant Gonzalez cannot be established under the New Jersey Tort Claims Act.  (*Id.* at 5.)

### C.   Plaintiff's Reply

In response, plaintiff claims that defendants failed to recognize that Paragraph 32 of the Amended Complaint alleges that Sergeant Gonzalez was part of an improper agreement to arrest plaintiff.  (Reply Br. at 1-2, ECF No. 11-1.)  Plaintiff also contends that defendants' argument

that plaintiff could have exercised due diligence to obtain the names of the officers ignores

several factors, such as: (1) the name of the officer on the summons was illegible (Reply Br. at 2

¶ 1, ECF No. 11-1; Robins Cert. ¶ 4; ECF No. 11); (2) the disorderly conduct charge was never

placed in the system; therefore, there was no discovery regarding that charge (Reply Br. at 2 ¶ 2,

ECF No. 11-1); (3) Plaintiff filed notice of the claims in a timely fashion, but the City of

Hoboken did not provide the names of the unidentified officers (Reply Br. at 2 ¶ 3 ECF No. 11-1;

Robins Cert. at ¶ 6, ECF No. 11); and (4) the insurance adjuster for the City of Hoboken never

responded to plaintiff and did not disclose the identity of the defendant officers. (Reply Br. at 3 ¶

4, 11-1.)  Plaintiff also notes that defendants do not argue that they would be prejudiced by the

amendment to the pleading, since they have been on notice as to these claims ever since the

notice of tort claim was filed and since the complaint was filed.  (Reply at 3, ECF No. 11-1.)

## IV.  <u>DISCUSSION</u>

Plaintiff did not comply with the September 30, 2011 deadline to amend.  After the

deadline for a court's scheduling order has passed, as it has in this case, a motion for leave to

amend is governed by both Fed. R. Civ. Pro. 15 and Fed. R. Civ. Pro. 16.  At this stage, "a party

must, under Rule 16(b) demonstrate good cause for its failure to comply with the scheduling

order before the trial court can consider, under Rule 15(a), the party's motion to amend its

pleading." *Graham v. Progressive Direct Ins. Co.*, 271 F.R.D. 112, 118 (W.D. Pa. 2010)

(internal quotation marks omitted); *see also Assadourian v. Harb*, No. 06-cv-896, 2008 WL

4056361, at *2 (D.N.J. Aug. 28, 2008) (finding that motion to amend after scheduling order

deadline has passed should be treated as request to amend pretrial scheduling order).  Therefore,

the Court must first consider whether there is good cause for plaintiff's failure to comply with the

Scheduling Order.

### A.    Good Cause to Adjust Scheduling Order Under Rule 16

Given that plaintiff's motion to amend the complaint was filed almost three months past

the September 30, 2011 deadline, the initial question before the Court is whether or not good

cause exists to modify the deadline set in the scheduling order to permit plaintiff to now file such

a motion.  The moving party has the burden of demonstrating good cause.  *Graham*, 271 F.R.D.

at 119.

Rule 16 authorizes courts to enter schedules for proceedings. Fed. R. Civ. P. 16(b). Rule

16© identifies a list of events that a court controls, including amending pleadings and completing

discovery. The pretrial scheduling order allows a court to take "judicial control over a case and to

schedule dates for completion by the parties of the principal pretrial steps." *Harrison Beverage*

*Co. v. Dribeck Imps., Inc.*, 133 F.R.D. 463, 469 (D.N.J.1990) (quoting Fed. R. Civ. P. 16(b)

advisory committee's note (1983 Amendment)); *see also Newton v. A.C. & S., Inc.*, 918 F.2d

1121, 1126 (3d Cir.1990) (stating that the purpose of Rule 16 is to provide for judicial control

over a case, streamline proceedings, maximize efficiency of court system, and actively manage

timetable of case preparation to expedite speedy and efficient disposition of cases).  Additionally,

"[t]o argue that there should be a liberal policy of freely permitting amendments is to ignore . . .

the purposes of case management and the scheduling orders which 'are at the heart of case

management.'"  *Harrison Beverage Co.*, 133 F.R.D. at 469 (quoting *Koplove v. Ford Motor Co.*,

795 F.2d 15, 18 (3d Cir.1986)).

Furthermore, although Rule 15, governing pleading amendments, contains a more lenient

standard than good cause, "the Rule 16(b) standard controls any decisions to alter a scheduling

order for purposes of making pleading amendments and it must be satisfied before determining

whether an amendment should be permitted under Rule 15." *Karlo v. Pittsburgh Glass Works,*

*LLC*, No. 10-1283, 2011 WL 5170445 at *2 (W.D. Pa. Oct. 31, 2011); *see also Stallings ex rel.*

*Estate of Stallings v. IBM Corp.*, No. 08-3121, 2009 WL 2905471, at *16 (D.N.J. Sept. 8, 2009)

("Rule 16 governs in these situations rather than Rule 15 because scheduling orders would

otherwise 'be nullified if a party could inject amended pleadings upon a showing of less than

good cause after scheduling deadlines have expired.'" (quoting *Harrison Beverage Co.*, 133

F.R.D. at 469)).

Under Rule 16(b)(4), a pretrial schedule "may be modified only for good cause and with

the judge's consent."  Fed. R. Civ. P. 16(b)(4); *E. Minerals & Chems. Co. v. Mahan*, 225 F.3d

330, 340 (3d Cir. 2000) (finding no abuse of discretion where district court denied motion to

amend complaint requested after scheduling order deadline for absence of good cause and

unexplained delay).  Allowing extensions in the absence of "good cause" would "deprive trial

judges of the ability to effectively manage the cases on their overcrowded dockets" and severely

impair the utility of scheduling orders. *Koplove*, 795 F.2d at 18.

Whether good cause exists under Rule 16(b) depends upon the diligence of the party

seeking to modify the scheduling order.  *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d

695, 701 (E.D. Pa. 2007); Fed. R. Civ. P. 16, Advisory Committee Note (1983 Amendment)

("the court may modify the schedule on a showing of good cause if it cannot reasonably be met

despite the diligence of the party seeking the extension.")  Therefore, "if the party was not

diligent, there is no 'good cause' for modifying the scheduling order and allowing the party to

file a motion to amend its pleading." *Chancellor*, 501 F. Supp. 2d at 701.  The Court has great

discretion in determining what kind of showing the moving party must make in order to satisfy the good cause requirement of Rule 16(b)." *Thoman v. Philips Med. Sys.*, No. 04-3698, 2007 WL 203943, at *10 (D.N.J. Jan. 24, 2007) (Brown, C.J.).

In this case, the Court finds that plaintiff has good cause to amend the complaint. Plaintiff concedes that the instant motion, filed nearly three months after the deadline for filing motions to amend, was untimely.  (Motion to Am. at 2, ECF No. 9-4.)  However, the amended complaint simply substitutes the proper names for the fictitious names of police officers "A, B, and C."  Courts have found good cause where there is simple inadvertence, no harm to defendants and no delay in the proceedings.  *See, e.g. Schreck v. Walmart*, No. 08-5729, 2009 WL 4800225, at *2 (D.N.J. Dec. 8, 2009) (good cause found where counsel failed to timely move to amend due to inadvertent mistake and the case would not be delayed, and "[m]ost important," would not cause prejudice); *Harrison Beverage Co.*, 133 F.R.D. at 470 (good cause found to add defense of mitigation because defense had been subject of previous motion practice, no new discovery for it would be needed, trial would not be delayed as result of amendment and "permitting [the] amendment merely makes explicit what had been implicit in the developing facts"); *In re Merck & Co., Inc. Vytorin/Zetia Sec. Litig.*, No. 08-2177, 2012 WL 406905, at *5 (D.N.J. Feb. 7, 2012) (good cause found to add two new allegations where attorney inadvertently left them out of original amended complaint and they were already the subject of discovery).

Here, plaintiff merely proposes inserting the proper names for the  "John Doe" defendants.  The Court, finding the decision in *Harrison Beverage* instructive, concludes that plaintiff's amended complaint merely clarifies, but does not alter, the litigation in any substantive

way.[1]  This minor amendment should come as no surprise to defendants, who were fully aware

that Officers Lepre, Burke, and Gonzalez were "Officers A, B, and C" based on the detailed facts

in the original complaint.  Indeed, defendants provided the proper names of the police officers to

plaintiffs with their Rule 26 disclosures dated September 9, 2011.  (Opp'n Br. at 3, ECF No. 10-

1; Opp'n Br. Ex. B, ECF No. 10-1.)  Plaintiffs are not attempting to introduce alternative theories

of liability or introduce additional claims.  In addition, plaintiff mistakenly assumed that the

defendants would be amenable to amending the complaint by consent order, as permitted under

Rule 15(a)(2) ("[A]party may amend its pleading [] with the opposing party's written

consent....") (Letter, Robins Cert. Ex. B, Dec. 12, 2011, ECF No.9-2.)  Furthermore, defendants

do not argue that they will be prejudiced by plaintiff's proposed amendment.  Given these

circumstances, "justice requires permitting the amendment."  *See Harrison Beverage Co*, 133

F.R.D. at 470.

 The Court does not condone failure to comply with its scheduling orders.  However, the

rules are meant to ensure fair and efficient litigation, not to "trap" attorneys or deprive plaintiffs

of their day in court.  *See In re Merck & Co., Inc. Vytorin/Zetia Sec. Litig.*, No. 08-2177, 2012

WL 406905, at *5 (D.N.J. Feb. 7, 2012).  The Third Circuit has recognized the importance of a

deciding a claim "on the merits rather than on technicalities."  *See Dole v. Arco Chem. Co.*, 921

F.2d 484, 487 (3d Cir. 1990).  Accordingly, the Court finds that in this case, where the

---

[1] In *Harrison Beverage*, the Court permitted the motion to amend with respect to the defense of mitigation.  133 F.R.D. at 470.  The Court found that "[b]ecause mitigation ha[d] been the subject of previous discovery and motion practice, permitting th[e] amendment merely [made] explicit what had been implicit in the developing facts."  *Id.*  The court determined that [t]he pleadings must be permitted to catch up with the facts, where . . . no undue prejudice is visited upon the party opposing the amendment . . . ."  133 F.R.D. at 470.

amendment is minor and will not require the parties to change course in discovery or other pretrial preparation, good cause has been met and Rule 16 is satisfied.

### B.      Amendment Under Rule 15

The Court must next analyze Monroe's motion under Rule 15.  In pertinent part, Rule 15 provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a).  The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits," and provide that if the underlying facts relied upon by a party might be a proper subject of relief, that party should have the opportunity to test its claims on the merits.  *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted).

The United States Supreme Court has stated that leave to amend under Rule 15 may be denied in cases of: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the opposing party; or (4) futility of amendment. *See Foman*, 371 U.S. at 182; *see also Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (stating that "[l]eave to amend must generally be granted unless equitable considerations render it otherwise unjust").  The decision to grant leave to amend rests in the sound discretion of the Court. *See Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of Virgin Islands, Inc.*, 663 F.2d 419, 425 (3d Cir. 1981).

Defendants do not argue that the motion to amend should be dismissed because of undue delay or undue prejudice.  Defendants only argue that permitting an amendment to add Sergeant Gonzalez would be futile.  Thus, the Court will only address defendants' futility argument.

### C.  Futility

12

An amendment will be considered futile if it is "frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imps., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (citations and quotations omitted). In determining whether an amendment is "insufficient on its face," the Court employs the Rule 12(b)(6) motion to dismiss standard. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citations omitted). The question before the Court, therefore, is not whether the movant will ultimately prevail. Rather, it is whether the plaintiff is able to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007).

"Federal Rules of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quotations and citation omitted). "When there are well-pleaded allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). While detailed factual allegations are not necessary to survive a Rule 12(b)(6) motion, "a [pleader's] obligation to provide the grounds of his entitlement to relief requires more than labels[,] conclusions, and a formulaic recitation of the elements of a cause of action" and demands that the "[f]actual allegations...be enough to raise a right to relief above the speculative level... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555; *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the *Twombly* pleading standard "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary

13

element[s].") (quotations and citations omitted).  When examining the sufficiency of a litigant's

pleading under Rule 12(b)(6), "all well-pleaded allegations of the complaint must be taken as

true and interpreted in the light most favorable to the [party asserting them], and all inferences

must be drawn in favor of them.  *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623

F.3d 147, 158 (3d Cir. 2010).

Here, defendants argue that the asserted claims against Sergeant Gonzalez are futile

because the plaintiff does not state a sufficient cause of action against him. (Opp'n at 4, ECF No.

10-1.)  Only three paragraphs of the proposed amended complaint include facts referring to

Sergeant Gonzalez and state that:

> [After Plaintiff was handcuffed and placed in the unmarked car], Defendants
> Lepre and Burke drove a block to Willow Avenue.... (Am. Compl. ¶ 30, ECF No.
> 8-1.)  At this address was a marked police car.  A uniformed policeman, believed
> to be Sergeant Rinaldo Gonzalez, came to the Red Jeep Cherokee.  Defendants
> Lepre and Burke got out of the Red Jeep Cherokee and spoke to Defendant
> Gonzalez.  (Am. Compl. ¶ 31, ECF No. 8-1.)
>
> Plaintiff Monroe heard either Defendant Lepre or Defendant Burke ask Defendant
> Gonzalez whether Plaintiff Monroe was the "right guy."  Plaintiff Monroe did not
> hear the response, but did hear Defendants Lepre, Burke and Gonzalez talking
> about what to do with him and one of them saying that they had gone too far and
> that they would have to take him "down."  (Am. Compl. ¶ 32, ECF No. 8-1.)
>
> Defendant Gonzalez then started to accuse Plaintiff Monroe of having drugs on
> him, which Plaintiff Monroe denied.  Defendant Gonzalez then asked Plaintiff
> Monroe why he was sweating, and Plaintiff Monroe stated that he had just come
> from the gym.  Defendant Lepre then stated words to the effect that Plaintiff
> Monroe must be the guy.  Defendant Gonzalez, whom Plaintiff Monroe believes
> may be of Hispanic heritage, then said, "I do not know because white people all
> look alike to me."  (Am. Compl. ¶ 33, ECF No. 8-1.)

Defendants argue that these allegations show that Sergeant Gonzalez took no part in

initiating the field interview with plaintiff, arresting plaintiff, transporting plaintiff, or charging

him with disorderly conduct.  (Opp'n at 4-5, ECF No 10-1.)  Defendants assert that these facts do

14

not support a claim that Sergeant Gonzalez infringed on the plaintiff's constitutional rights or violated state law.  (*Id.* at 5.)

Plaintiff contends that defendants fail to take into account the allegations in Paragraph 32 of the Complaint.  *See supra* (quoting Am. Compl. ¶ 32, ECF 8-1.)  According to plaintiff, "the Amended Complaint alleges that Sergeant Gonzalez was part of an improper agreement to arrest plaintiff even though he was not the 'right guy.'"  (Reply at 2, ECF No. 11-1.)

### 1.  Civil Conspiracy

Plaintiff's allegations against Sergeant Gonzalez are far from clear.  However, neither Paragraph 32 nor any other part of the complaint properly alleges that Gonzalez participated in an "improper agreement" or unlawful conspiracy to violate plaintiff's civil rights, as plaintiff suggests in his Reply brief.[2]  "Civil conspiracy is [] a vehicle by which §1983 liability may be imputed to those who have not actually performed the act denying constitutional rights." *McGovern v. City of Jersey City*, No. 98-CV-5186 (JLL), 2006 WL 42236, at *9 (D.N.J. Jan. 6, 2006).  "To properly state a § 1983 conspiracy claim, a plaintiff must allege that "persons acting under color of state law conspired to deprive him of a federally protected right."  *Al-Ayoubi v. City of Hackensack*, No. 2:10-cv-02592, 2011 WL 6825944, at *8 (D.N.J. Dec. 28, 2011) (quotations and citation omitted).  The allegations for a conspiracy claim "'must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action.'"  *Id.*  (quoting *Capogrosso v. Supreme Court of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009)).

---

[2] A party may not amend his pleadings through a reply brief.  *See Penn ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1998).

Here, nothing in the complaint properly states a claim for conspiracy against Sergeant Gonzalez.  The complaint fails to allege that Gonzalez agreed with or participated in any of the actions taken by Lepre and Burke.  The complaint only alleges that Officers Lepre and Burke consulted Sergeant Gonzalez to see if plaintiff was "the right guy," and Sergeant Gonzalez did not know if he was or was not.  The remaining facts fail to show that there was any agreement between Sergeant Gonzalez and the other officers to violate any of plaintiff's rights.

Counts Two, Four, Five and Six of the amended complaint assert claims against "defendants" and Counts One, Eight and Nine specifically name Sergeant Gonzalez in the allegations.  These counts include two claims under § 1983 for violations of the Fourth and Fourteenth Amendments (Counts One and Two), violations of the New Jersey Civil Rights Act (Count Four), negligence (Count Five), malicious use of process (Count Six), false imprisonment (Count Eight), and intentional infliction of emotional distress (Count Nine).  None of the facts alleged sufficiently state claims against Sergeant Gonzalez for any of these counts in the complaint.

### 2. Federal Law Claims For Constitutional Rights Violations Under 42 U.S.C. § 1983

Plaintiff has brought suit for damages under 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment rights.  To state a claim under § 1983, a plaintiff must show that: (1) the conduct at issue was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights, privileges, or immunities secured by the laws and Constitution of the United States. *See West v. Atkins,* 487 U.S. 42, 48 (1988).  Section 1983 itself does not establish substantive rights, but instead provides a "method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quotations and citation

16

omitted).  A claim in a civil rights action must show that the defendant had "personal involvement in the alleged wrongs; liability cannot be predicated on the operation of *respondeat superior." Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  *See also Iqbal*, 129 S.Ct. at 1949 (explaining that supervisors are "only liable for his or her own misconduct").

Here, Sergeant Gonzalez was acting under color of state law in his official capacity as an officer for the Hoboken Police Department.  *See West*, 487 U.S. 42 at 50 ("[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.")  The issue before us is whether the plaintiff has stated sufficient facts to support the claim that Sergeant Gonzalez violated plaintiff's constitutional rights.

### a.  Count One: Arrest in Violation of the Fourth Amendment

Count One alleges that Monroe has suffered damages from "[t]he intentional, malicious and/or reckless unreasonable seizure, arrest and detainment of plaintiff Monroe under color of State law by defendants proximately caused plaintiff Monroe's Fourth and Fourteenth Amendment[3] rights under the United States Constitution to be violated."  (Am. Compl. ¶ 40, 41, Dec. 23, 2011, ECF No. 8-1.)  "An arrest may violate standards of the Fourth Amendment if effected with unreasonable force, or if made without probable cause to believe that a crime has been committed." *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994) (citations omitted).  Courts apply an objective standard to determine whether an arrest was made without

---

[3] Plaintiff's complaint does not appear to allege violations of the Fourteenth Amendment separate from his Fourth Amendment claims.  The gravamen of plaintiff's complaint is grounded in the Fourth Amendment, based on his allegedly false arrest and malicious prosecution claims.  Thus, the Court will not address the Fourteenth Amendment independent of the Fourth Amendment claims.

probable cause "based on the facts available to the officers at the moment of arrest." *Id.* (quoting *Beck v. Ohio*, 379 U.S. 89, 96 (1964)). Claims that police officers used excessive force during an arrest are analyzed under the Fourth Amendment and its reasonableness standard, rather than the "more generalized notion of substantive due process." *Graham*, 490 U.S. at 395.

Whether the officers who arrested plaintiff had some reasonable basis to believe he had committed a crime, or whether unreasonable force was used during the arrest, is of no moment to the analysis here. According to the proposed Amended Complaint, Sergeant Gonzalez was not present during the arrest and only became tangentially involved after plaintiff was already in the custody of officers Lepre and Burke. According to the proposed Amended Complaint, Officer Lepre said to Officer Burke and Sergeant Gonzalez that plaintiff "must be the guy." (Am. Compl. ¶ 33, 8-1.) None of the facts alleged shows that Sergeant Gonzalez was personally involved in the arrest. Thus, the allegations do not show that Sergeant Gonzalez caused plaintiff's Fourth and Fourteenth Amendment rights to be violated. Accordingly, amending the complaint to state such a claim against Sergeant Gonzalez would be futile.

### b. Count Two: Malicious Prosecution

Count Two alleges that the "actions, conduct and statements of the Defendants did proximately cause the initiation of a proceeding in Hoboken Municipal Court" without probable cause to initiate the proceeding and unlawfully issued a summons of disorderly conduct to plaintiff, and that this unlawful charge violated plaintiff's Fourth and Fourteenth Amendment rights. (Am. Compl. ¶ 43, 44, 47, 48, ECF No. 8-1.)

Count Two appears to raise a claim for malicious prosecution. However, a claim for malicious prosecution against Sergeant Gonzalez also fails. To state a claim for malicious

prosecution under § 1983 when the claim is brought under the Fourth Amendment, "a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the defendants initiated the proceeding without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty as a consequence of the criminal proceeding." *Jones v. Middletown Township*, 253 F. App'x. 184, 187 (3d Cir. 2007).

According to the proposed Amended Complaint, Sergeant Gonzalez was not present during the arrest or when the summons was issued.  Plaintiff has not made any allegations that would support a claim that Sergeant Gonzalez was involved in the issuance of the summons or agreed to its issuance.  Plaintiff has failed to allege sufficient facts to state a claim for malicious prosecution against Sergeant Gonzalez that is plausible on its face.  Thus, leave to amend the complaint to add this claim against Sergeant Gonzalez is denied as futile.[4]

### 3. State Law Claims

#### a. Count Four:  New Jersey Civil Rights Act Violation

Count Four of the Complaint alleges that defendants' "actions and inactions" constitute a violation of the New Jersey Civil Rights Act. (Am. Compl. ¶ 54, ECF No. 8-1)  The New Jersey Civil Rights Act provides that:

---

[4] Sergeant Gonzalez would also be entitled to qualified immunity.  "Government officials are entitled to qualified immunity under § 1983 in the performance of their discretionary duties if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Gibson v. Inacio*, No. 09-6356, 2010 WL 3943684, at *4 (D.N.J. Oct. 5, 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1992)).  Here, because plaintiff has failed to plead facts demonstrating that Sergeant Gonzalez's actions violated Plaintiff's constitutional rights, Gonzalez is entitled to qualified immunity and immune from liability for any injuries alleged under § 1983.

> Any person who has been deprived of any substantive due process or equal
> protection rights, privileges or immunities secured by the Constitution or laws of
> the United States, or any substantive rights, privileges or immunities secured by
> the Constitution or laws of this State, or whose exercise or enjoyment of those
> substantive rights, privileges or immunities has been interfered with or attempted
> to be interfered with, by threats, intimidation or coercion by a person acting under
> color of law, may bring a civil action for damages and for injunctive or other
> appropriate relief.

N.J. Stat. Ann. § 10:6-2(c).  The NJCRA was modeled after 42 U.S.C. § 1983 and "[c]ourts have

repeatedly construed the NJCRA in terms nearly identical to its federal counterpart: Section

1983." *Chapman v. New Jersey*, No. 08-4130, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009);

*Petit v. New Jersey*, No. 09-3735, 2011 WL 1325614, at *3 (D.N.J. Mar. 30, 2011) ("This district

has repeatedly interpreted NJCRA analogously to § 1983.")

Because the Court's analysis on the § 1983 claims applies to plaintiff's claims under the

NJCRA, the Court finds that the plaintiff has also failed to state sufficient facts supporting the

claim that Sergeant Gonzalez deprived plaintiff of his constitutional rights under the NJCRA.

Thus, Count Four, as it relates to Sergeant Gonzalez, is futile.

**b. State Law Tort Claims**

Monroe asserts several tort claims under New Jersey state law.  Defendants argue that

none of the state law tort claims can be established under the New Jersey Tort Claims Act, N.J.

Stat. Ann. § 59:1-1 *et seq*. ("NJTCA").  (Opp'n at 5, ECF No. 11-2556.)  The NJTCA provides

that "[a] public employee is immune from liability 'if he acts in good faith in the execution or

enforcement of any law.'" *Damiani v. West Deptford Twp.*, No. 07-2884, 2008 WL 656041, at *3

(D.N.J. Mar. 7, 2008) (quoting N.J. Stat. Ann. § 59:3-3.)  Questions of good faith are determined

using an "objective reasonableness" standard, "judged on the totality of the circumstances."  *Diaz

v. City of Hackensack*, No. 06-4615 (JLL), 2010 WL 1459705, at *4 (D.N.J. Apr. 12, 2010)

(citations omitted).  The NJTCA also provides that "[n]othing in this section exonerates a public employee from liability for false arrest or false imprisonment."  N.J. Stat. Ann. § 59:3-3.

## 1.  Count Five:  Negligence

Count Five asserts that "Defendants had a duty to act reasonably with respect to the seizure, arrest and detainment of individuals," and "defendants breached their duty of care by unreasonably seizing, arresting and detaining plaintiff Monroe," and due to this "negligence," Monroe suffered damages.  (Am. Compl. ¶¶ 59, 61, 63, ECF No. 8-1.)  The Complaint also alleges that "currently unidentified Police Department supervisors had a further duty to train and otherwise ensure that individual police officers... acted reasonably with respect to the seizure, arrest and detainment of citizens' rights" and that these supervisors "breached their duty of care" by authorizing and allowing individual police officers "to follow the policy and procedure of seizing, arresting and detaining citizens without probable cause."  (Am. Compl. ¶¶ 60, 62, ECF No. 8-1.)

It is unclear which allegations in Count Five apply specifically to Sergeant Gonzalez.  To the extent that Count Five is alleging negligence under New Jersey state law against Sergeant Gonzalez, Monroe's claim is futile.  First, none of the allegations against Sergeant Gonzalez shows an absence of good faith or that he acted unreasonably toward plaintiff under the circumstances.  Thus, the NJTCA shields Sergeant Gonzalez from liability for claims of negligence.

Second, even if the NJTCA did not apply, Monroe fails to establish a claim against Sergeant Gonzalez for negligence.  In order to establish a prima facie claim of negligence, "plaintiff must show that (1) the defendant owed a duty of care to the plaintiff, (2) defendant

breached that duty of care, (3) defendant's breach was the proximate cause of plaintiff's injury, and (4) defendant's breach caused actual damages to plaintiff." *Stroby v. Egg Harbor Twp.*, 754 F. Supp. 2d 716, 721 (D.N.J. 2010) (citing *Weinberg v. Dinger*, 106 N.J. 469, 484 (1987)).  Here, plaintiff fails to state sufficient facts supporting his allegation that Sergeant Gonzalez breached a duty of care.  Furthermore, plaintiff fails to adequately allege that any of Sergeant Gonzalez's actions proximately caused plaintiff's asserted injuries.  Accordingly, plaintiff's motion to amend the complaint to assert a negligence claim against Sergeant Gonzalez is denied as futile.

### 2.  Count Six: Malicious Prosecution

Count Six of the complaint alleges that the "actions and inactions of the Defendants constitute the tort of malicious use of process."  (Am. Compl. ¶¶ 64-66, ECF No. 8-1.)  The NJTCA also applies to claims for malicious prosecution and abuse of the legal process.  *Wiltz v. Middlesex Cnty. Office of the Prosecutor*, No. 05-3915, 2006 WL 1966654, at *6 (D.N.J. July 12, 2006), *aff'd*, 249 F. App'x 944 (3d Cir. 2007).  The NJTCA specifically provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment."  N.J. Stat. Ann. § 59:3-8. However, the immunity provisions of the Act "are subject to the exception contained in N.J. Stat. Ann. § 59:3-14."  *Stolinski v. Pennypacker*, No. 07-3174, 2008 WL 5136945, at *6 (D.N.J. Dec. 4, 2008).  According to N.J. Stat. Ann. § 59:3-14, "[n]othing in this Act shall exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct."  N.J. Stat. Ann. § 59:3-14a.  Where plaintiff's claims are premised upon the defendants' "actual malice or willful misconduct," the NJTCA cannot shield defendants from liability.  *Stolinski*, 2008 WL

5136945 at *6.

In this case, the complaint has not established a claim for malicious prosecution against Sergeant Gonzalez.  A claim for malicious prosecution requires the plaintiff to allege that:  "(1) a criminal action was instituted by this defendant against the plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably to the plaintiff."  *LoBiondo v. Schwartz*, 199 N.J. 62, 90 (2009).[5] Construing the claim as one for malicious prosecution, the Court finds that the allegations fail to establish that Sergeant Gonzalez instituted proceedings against plaintiff.  The facts pled show that Sergeant Gonzalez was not present during plaintiff's arrest, nor was he present at the police station when Officers Lepre and Burke issued plaintiff the summons.  As explained above, plaintiff has failed to state sufficient facts showing that Sergeant Gonzalez was in an agreement with Officers Lepre and Burke to violate any of plaintiff's rights.  Furthermore, the Tort Claims Act's "actual malice" exception would not bar Sergeant Gonzalez's entitlement to immunity because none of the allegations suggests that his conduct constituted "actual fraud, actual malice or willful misconduct."  Accordingly, plaintiff's motion to amend the Complaint to assert a malicious use of process claim against Sergeant Gonzalez is denied as futile.

### 3.  Count Eight:  False Imprisonment Claim

Count Eight asserts a false imprisonment claim against Sergeant Gonzalez, Officer Lepre, and Burke. (Am. Compl. ¶¶ 70-72, ECF No. 8-1.)  The NJTCA does not apply to claims for false

---

[5]  The Court notes that plaintiff alleges a claim for "the tort of malicious use of process" in his complaint.  (Compl. at 14 ¶ 65.)  The tort of "malicious use of process requires the plaintiff to prove the *civil* counterpart to each of [the] elements [of malicious prosecution]...."  *LoBiondo v. Schwartz*, 199 N.J. 62, 90 (2009).  It is "essentially the analog used when the offending action in question is civil rather than criminal."  *Id.* at 89-90.

imprisonment.  *See* N.J. Stat. Ann. § 59:3-3.  The tort of false imprisonment has two elements:
"(1) an arrest or detention of the person against his will; (2) done without proper legal authority
or legal justification."  *Gattas v. City of Jersey City*, 07-4242, 2010 WL 892187, at *13 (D.N.J.
Mar. 5, 2010);  *Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 591 (2009).

The allegations in the Complaint fail to establish that Sergeant Gonzalez arrested or
constrained the plaintiff.  The facts show that Sergeant Gonzalez was absent during the initial
encounter with plaintiff and during plaintiff's arrest, and took no part in placing plaintiff in
Officer Lepre and Burke's vehicle.  Gonzalez also took no part in transporting plaintiff to the
police station.  Even if plaintiff was detained without legal justification, the allegations fail to
support Sergeant Gonzalez's involvement in Monroe's detention.  Accordingly, plaintiff's
motion to amend the Complaint to assert a false imprisonment claim against Sergeant Gonzalez
is denied as futile.

### 4.  Count Nine:  Intentional Infliction of Emotional Distress Claim

Count Nine asserts an intentional infliction of emotional distress claim against Sergeant
Gonzalez, Officer Lepre, and Officer Burke. (Am. Compl. ¶¶ 73-75, ECF No. 8-1.)  The NJTCA
does not provide immunity from claims of intentional infliction of emotional distress. *See* N.J.
Stat. Ann. § 59:3-14(a) (no immunity if it is found that the public employee engaged in "willful
misconduct").

To establish a claim for intentional infliction of emotional distress, the plaintiff must
prove (1) that the defendant acted intentionally or recklessly; (2) that the defendant's conduct
was extreme and outrageous; (3) that the defendant's actions were the proximate cause of the
plaintiff's emotional distress; and (4) that the emotional distress suffered by the plaintiff is so

severe that no reasonable person would be able to endure it. *Gattas v. City of Jersey City*, 2010 WL 892187, at *7; *Leang v. Jersey City Bd. Of Educ.*, 198 N.J. at 587 (explaining that "the emotional distress [must] be so severe that no reasonable person could be expected to endure it" (quotations and citation omitted)).

The facts, read in the light most favorable to the Plaintiff, show that Sergeant Gonzalez accused plaintiff of possessing drugs, asked him why he was sweating, and said to Officers Lepre and Burke that he did not know if plaintiff was the "right guy" because "white people all look alike" to him.  (Am. Compl. ¶¶ 32-33.)  These facts do not state a sufficient claim for intentional infliction of emotional distress that is plausible on its face.  As stated, the facts do not establish that Sergeant Gonzalez's conduct was extreme and outrageous.  In addition, the facts do not support the allegation that Monroe experienced emotional distress so severe that no reasonable person could endure it.  Thus, plaintiff's motion to amend the complaint to assert a claim of intentional infliction of emotional distress against Sergeant Gonzalez is denied as futile.

**V. <u>CONCLUSION</u>**

For the reasons set forth above, plaintiff's motion for leave to file an Amended Complaint is granted in part and denied in part.  Plaintiff may amend the Complaint to substitute the fictitious names of Officers A and B with their proper identities, respectively, Edward Lepre and Nicholas Burke. However, plaintiff's motion to amend the Complaint to assert claims against Sergeant Rinaldo Gonzalez is denied as futile.

s/ Michael A. Hammer_____
UNITED STATES MAGISTRATE JUDGE

25